UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DENNIS O'NEAL LEE                                                PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 1:15CV203-LG-RHW

CHRISTOPHER EPPS et al                                          DEFENDANTS

## **PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

Plaintiff Dennis O'Neal Lee, proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 prisoner civil rights complaint. In his original complaint, Plaintiff alleged that he suffers from a serious scalp infection that requires treatment by a dermatologist. Doc. [1]. According to Plaintiff, on October 15, 2014, Nurse Practitioner Karen Deese submitted a request for specialty care to Defendant Dr. Zein in the Office of Medical Compliance. Plaintiff contends that, as of the filing of his initial complaint, he had not been seen by a dermatologist. As a result of the scalp condition, he is unable to sleep. The condition is worsening and spreading to other parts of his body. He asserts that the Mississippi Department of Correction's (MDOC) medical care provider (Centurion) refuses to allow inmates to see specialists as a cost-saving measure.

Plaintiff also alleged that on February 19, 2015, he was subjected to excessive force. On that day, Plaintiff observed a correctional officer (Defendant Christopher Luker) assaulting another inmate. When Plaintiff objected to Luker's treatment of the other inmate, "Warden Turner said something and without warning Defendant C. Luker began to choke me as I laid in bed the other K-9 officers. . . pulled me off the bed began to kick me while K-9 T. Byrd punched me in the face several times." Plaintiff further alleges that the officers dragged him into the hallway, handcuffed him, and "did it again". According to Plaintiff, Defendant Marshal Turner watched the assault and did not intervene. After the incident, Plaintiff was stripped down to his

boxers and placed in a holding cell for one night with the air conditioning unit on full blast and the light on. He was not given a mat, sheet, toiletries, or his personal property. Plaintiff was seen by medical staff and given treatment for back pain. He alleges that he takes pain medication for the back injury that resulted from the assault. When Plaintiff finally received his personal property, some of it was missing (his wedding ring and seven bags of Christmas package chips).

On February 19, 2015, he was served with disciplinary charges for assaulting staff and for possession of a knife. The Rules Violation Report (RVR) related to the altercation between Plaintiff and Defendants Luker and Byrd. On February 21, 2015, he alleges he was placed in solitary confinement. On February 27, 2015, he received a disciplinary hearing before Defendant Jacqueline Leverette. Although Plaintiff requested witnesses at the hearing, "Leverette stated that she was not gonna call the witnesses because Warden Turner told her to find me guilty anyway." Plaintiff was found guilty based on the staff report. According to the staff report, Plaintiff grabbed Defendant Byrd's left arm. Plaintiff asserts that there was no evidence of a serious injury to Defendant Byrd; therefore, Plaintiff did not commit an assaultive action. Plaintiff also alleges that Defendant Byrd's report was fabricated in order to cover up the assault against Plaintiff. Plaintiff filed an administrative appeal to Defendant Turner, who denied the appeal. In his first amended complaint, Plaintiff requested that his RVRs be expunged based on due process violations. Doc. [9]. He alleges that he lost good earned time, good earned time classes, and was placed in solitary confinement as a result of the RVR.

In a response to Court order, Plaintiff elaborated on the medical care claim regarding his scalp condition. Doc. [10]. He explained that doctors prescribed a consult with a dermatologist on October 15, 2014. Dr. Woodall approved the specialty care on October 17, 2014. However,

Plaintiff did not see a dermatologist until July 10, 2015 (nine months later). According to Plaintiff, this delay caused unbearable pain and a staph infection that caused hair loss and permanent disfigurement from scar tissue on his scalp. Plaintiff alleges that this delay was caused by Defendant Christopher Epps' policy, practice, and custom.

In another response to Court order, Plaintiff described the conditions in solitary confinement. Doc. [23]. He stated that he is kept in lockdown 24 hours a day. The windows do not work. There is no fan in the cell and temperatures reach in excess of 110 degrees. The toilet-sink combination constantly gets stopped up and floods the cell. There are no televisions, educational programs, or church services. He is strip searched and shackled whenever he leaves his cell. Medical staff do not conduct sick calls. Inmates yell, scream and bang metal all night; and they throw feces. There is inadequate ventilation. There are not enough officers on duty. The food is always cold. The top-tier showers do not have lights. Rats constantly bother the inmates at night.

Plaintiff filed a second amended complaint on July 8, 2016, alleging that Defendants were deliberately indifferent to a painful left testicle. Doc. [34]. According to Plaintiff, on August 3, 2015, he had an appointment with urologist Dr. Ross who diagnosed a "painful testicular mass". Dr. Ross prescribed Mobic and a follow up exam. Plaintiff alleges that he did not receive proper follow up care. At some point, Plaintiff was prescribed Naproxen. Plaintiff also sued Defendants Perry, Banks, Fisher and Centurion based on the fact that they are responsible for overall medical treatment of inmates in the MDOC system.

The undersigned conducted a screening hearing on April 12, 2017. Doc. [75]. Counsel for Defendants denied any knowledge of a "Dr. Zein", who has been named as a defendant. Plaintiff stated that Dr. Zein works for the Office of Medical Compliance for MDOC. *Id.* at 11-

13.  At the hearing, the Court gave Plaintiff until May 15, 2017, to file a proper motion to add Dr. Zein as a party.  *Id.* at 14.  Dr. Zein has not been located or served with process as of the date of this report and recommendation.  Plaintiff has not filed any follow-up motions regarding the inclusion of Dr. Zein in this lawsuit.

With respect to his scalp condition, Plaintiff testified that it is a pre-existing condition that reoccurred while incarcerated.  *Id.* at 21-23.  Previously, in 2012-13, a dermatologist had injected Plaintiff's scalp with steroids.  *Id.* at 21.  The dermatologist also placed Plaintiff "on antibiotics and shampoos".  *Id.*  By June 2013, Plaintiff's scalp condition had cleared up.  *Id.* at 22-23.  At some point while incarcerated, Plaintiff's scalp condition reappeared.  He asked to see a specialist in October 2014, but did not see the dermatologist until July 2015.  *Id.* at 23.  Plaintiff admitted that prison officials were giving him the "same treatment" as the dermatologist, but the condition kept getting worse because he was not receiving steroid shots to his scalp.  *Id.*  According to Plaintiff, Nurse Karen Deese said in October that Plaintiff needed the shots.  *Id.*  Eventually, Plaintiff was seen by a dermatologist on July 10, 2015, nine days after Plaintiff filed the instant complaint.  *Id.* at 23-24.

Plaintiff also testified with regard to the alleged assault of February 19, 2015.  *Id.* at 24-26.  According to Plaintiff, the assault resulted in a "de minimis back injury".  *Id.* at 26.  Plaintiff testified that he did not receive due process during the disciplinary hearing for the RVR that resulted from the November 19, 2015, incident.  *Id.* at 32.  According to Plaintiff, he was not allowed to have witnesses testify on his behalf.  *Id.*  Furthermore, he was not present when prison officials searched his cell and found a knife for which he was disciplined.  *Id.* at 32-33.

During the screening hearing, Plaintiff asserted that he is not requesting monetary damages from anyone except Christopher Epps.  *Id.* at 27, 38-39.  He is simply requesting

injunctive relief requiring MDOC to follow its policy and procedure of videotaping any use of force against inmates. *Id.* at 27. Although Plaintiff alleged in his complaint that he was placed in solitary confinement for two years, his testimony later confirmed that he was placed on "lockdown" and not solitary confinement. *Id.* at 29, 51-52. Plaintiff alleges unconstitutional conditions of confinement for the two years he spent in lockdown. *Id.* at 33-34.

With respect to his testicular condition, Plaintiff testified that on August 3, 2015, Dr. Ross, an offsite urologist, diagnosed a painful testicular mass and prescribed follow-up treatment that prison officials failed to perform. *Id.* at 34-35. Plaintiff testified that the testicular mass has been present since he was a child and that it has been removed twice. *Id.* at 36. Apparently the mass returned. Dr. Ross prescribed Mobic and scheduled a follow-up appointment. *Id.* Plaintiff testified that the Mobic did not help his condition. *Id.* at 36-37. Plaintiff also complains he was not taken to his follow-up appointment after being transferred to Central Mississippi Correctional Facility. *Id.* at 36. Because of transfers between prison facilities, Plaintiff testified that his medical treatment was delayed. *Id.*

After a review of the pleadings and screening hearing transcript, the undersigned finds that Plaintiff asserts the following claims: (1) excessive force relating to an incident of February 19, 2015; (2) due process violations relating to the RVR and disciplinary hearing from the February 19, 2015, incident; (3) inadequate medical care for Plaintiff's testicular condition; (4) inadequate medical care for Plaintiff's scalp condition; and (5) unconstitutional conditions of confinement in lockdown. Defendants Jaqueline Banks, Thomas Byrd, Marshall Fisher, Ronald King, Jacqueline Leverette, Gloria Perry, and Marshal Turner have filed a motion for summary judgment. Doc. [79]. Defendant Centurion (the medical care provider at SMCI) also has filed a motion for summary judgment. Doc. [82]. The motions were filed on August 9 and August 17,

2015, respectively. Plaintiff has not filed a response in opposition to the motions for summary judgment.

The Court notes that Defendant Christopher Epps has been served with process but has not filed an answer. Defendant Christopher Luker also has been served with process but not answered. Apparently Luker is no longer employed with the MDOC and therefore is not represented by the Mississippi Attorney General's Office. Doc. [75] at 8-9, 15. On November 6, 2017, Plaintiff filed a notice of change of address. Doc. [88]. He is no longer incarcerated at SMCI but has been moved to the Mississippi State Penitentiary at Parchman. *Id.* Plaintiff also filed a motion for appointment of counsel on November 6, 2017. Doc. [87].

## Law and Analysis

### Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union*

*Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**Failure to Exhaust**

Defendants argue that Plaintiff failed to exhaust administrative remedies with respect to the following claims: (1) excessive force claims against Defendants Byrd, Luker, and Turner; and (2) inadequate medical care for Plaintiff's testicular condition. Defendants assert that Plaintiff did not file a grievance regarding the excessive force claim. Moreover, Plaintiff did not file a grievance regarding medical treatment for left testicle pain until after he filed the instant lawsuit.

Exhaustion of administrative remedies through the prison grievance system is a jurisdictional prerequisite for lawsuits filed pursuant to 42 U.S.C. § 1983. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted. 42 U.S.C. § 1997e(a). The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *See Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. 2008). Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong." *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). Dismissal is appropriate where an inmate has failed to properly exhaust the administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal". *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement. The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act. *Wright*, 260 F.3d at 358. "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

A prisoner's grievance need only provide prison officials with "fair notice" of the problem that will form the basis of the prisoner's later-filed lawsuit. *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004). The grievance must be sufficient in detail to give prison officials time and opportunity to address complaints internally before allowing the initiation of a federal lawsuit. *Moussazadeh*, 703 F.3d at 788. An inmate need not present a full-fledged legal theory in his grievance. *Johnson*, 385 F.3d at 518. Prisoner grievances are not required to allege a specific legal theory or facts that correspond to all of the required elements of a particular legal theory. *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003).

With respect to Plaintiff's claim for excessive force, he filed an Administrative Remedy Program grievance (ARP 15-456) mentioning an assault by prison staff on February 19, 2015; however, Plaintiff did not identify the individual staff members who assaulted him. Nor did he allege in the ARP that he was a victim of excessive force or that he sustained an injury. Rather, Plaintiff merely made a passing reference to the "assault". In fact, the subject of ARP 15-456 is Plaintiff's appeal of the RVR and his dissatisfaction with the disciplinary proceedings relating to the RVR. In his grievance, Plaintiff complained that he was not afforded due process rights at the disciplinary hearing of February 27, 2015. Although Plaintiff's ARP provided fair notice of a potential due process claim relating to the RVR, it does not provide prison officials with fair notice of an excessive force claim against Defendants Byrd, Luker, and Turner. *See Hayes v. Dunn*, No. 3:14cv468-LRA, 2016 WL 884654, at *2-3 (S.D.Miss. Mar. 7, 2016) ("ARP requires that all officials involved be named or at least reference by description"). *See also Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001) (holding plaintiff failed to exhaust with respect to failure to protect claim against a guard not mentioned in the grievance).

Plaintiff filed a later grievance regarding "Staff on Inmate Violence" (ARP 15-1886). Doc. [79-4]. In this grievance, Plaintiff's allegations of excessive force do not identify a specific day, time, place, or person who committed an act of excessive force against him. *See id.* at 3-4. This later grievance is too vague to provide prison officials with fair notice of an excessive force claim against Defendants Byrd, Luker, and Turner based on the events of February 19, 2015. Accordingly, the undersigned finds that Plaintiff failed to exhaust administrative remedies with regard to his excessive force claims against Defendants Byrd, Luker, and Turner. Furthermore, Plaintiff does not seek monetary damages against Defendants Luker, Byrd, and Turner for their alleged actions. Plaintiff testified that he seeks only injunctive relief. Injunctive relief against

these individual Defendants is unavailable for a single, isolated incident that occurred in the past. Plaintiff does not allege any type of ongoing actions on the part of Luker, Byrd or Turner with respect to excessive force. In fact, Luker is no longer employed by MDOC, so Plaintiff's request for injunctive relief against him appears to be moot.

Plaintiff did file an ARP grievance (ARP 15-2003) relating to his testicular condition. Doc. [79-1]. However, the grievance was signed by Plaintiff October 12, 205, and received by MDOC officials on October 15, 2015. Consequently, Plaintiff did not file this ARP grievance prior to filing the instant lawsuit on July 1, 2015. Rather, he filed the grievance approximately two-and-a-half months after commencing the instant litigation. The second step response was signed on February 5, 2016, approximately seven months after Plaintiff filed the instant lawsuit. Thus, Plaintiff failed to exhaust administrative remedies with regard to his testicular condition prior to initiating litigation. As will be discussed, the summary judgment evidence demonstrates that Plaintiff received ongoing medical treatment for his testicular condition; therefore, in the alternative, the claim should be denied on the merits.

**Due Process**

As mentioned earlier, Plaintiff alleged that he was denied due process during the disciplinary hearing for the RVR relating to the February 19, 2015, incident. Specifically, Plaintiff complains that he did not cause an injury to Officer Byrd; therefore, he did not commit an assaultive action as defined by the prison's Disciplinary Procedures. Plaintiff also complains that he was not allowed to present witnesses on his behalf in violation of the prison's Disciplinary Procedures. Plaintiff further contends that he was not present during the search of his cell when a knife was found in a pair of shoes under a bed. Doc. [75] at 32-33. Plaintiff denies that the knife belonged to him. *Id.* at 33.

Inmates who are charged with institutional rule violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Id.* at 487. *See also Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir.1995). For example, a prisoner's loss of good-time credits as a result of punishment for a disciplinary conviction, which increases his sentence beyond the time that would otherwise have resulted from state law providing mandatory sentence reductions for good behavior, must be accompanied by certain procedural safeguards in order to satisfy due process. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Due process also requires that "some evidence" in the record supports the disciplinary action. *Morgan v. Dretke*, 433 F.3d 455, 457 (5th Cir. 2005).

Plaintiff was placed in lockdown as punishment for the RVR at issue. Administrative segregation, being an incident of the ordinary life of a prisoner, will never be a ground for a constitutional claim absent exigent circumstances. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999). In *Sandin*, the plaintiff was placed in disciplinary segregation for 30 days as punishment for violating prison disciplinary rules. *Id.* at 486. The plaintiff had directed angry and foul language at a prison guard during a strip search. The Court held that the plaintiff's confinement in disciplinary segregation for 30 days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* In interpreting *Sandin*, the Fifth Circuit in dicta stated that "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status." *Orellana*, 65 F.3d at 31

(5th Cir. 1995). The undersigned finds that Plaintiff's placement on "lockdown" for two years does not state a constitutional violation under the Due Process Clause. *See Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008); *Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998).

The essence of Plaintiff's challenge to the RVR conviction is that he did not commit an assault against Officer Byrd as that term is defined by the prison's Disciplinary Procedures. Furthermore, he was not allowed to call witnesses to testify and the hearing officer did not interview other inmates regarding the incident, in violation of the prison's Disciplinary Procedures. To the extent Plaintiff alleges Defendants failed to follow their own internal policies, he fails to state a claim. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Violations of prison regulations, without more, do not give rise to a federal constitutional violation. *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). Moreover, Plaintiff does not allege any exigent circumstances. As such, Plaintiff does not allege any due process or other constitutional violation arising from his classification. *See Sandin*, 515 U.S. at 485; *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). He does not allege that the RVR conviction increased the duration of his confinement. Although in an amended complaint, he alleged loss of "good earned time" as a result of the RVR, Mississippi law does not provide prisoners with a constitutionally protected liberty interest in earning good-time credits. *Smith v. Hargett*, No. 94-60764, 1995 WL 581995, at *1 (5th Cir. Sept. 28, 1995); *Cooper v. Director of Records*, No. 4:16CV173-SA-JMV, 2016 WL 4444873, at *2 (N.D. Miss. Aug. 23, 2016).

Plaintiff is requesting that this Court sit in review of his RVR conviction. Federal courts cannot retry every prison disciplinary dispute. *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994). Federal courts are not required to examine the entire record, independently assess the

credibility of witnesses, or weigh the evidence to determine whether there is sufficient evidence to support the factual findings of the disciplinary hearing officer. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Prison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the decision of the prison officials. *Smith v. Rabelais*, 659 F.2d 539, 545 (5th Cir. 1981). Plaintiff implicitly concedes there was "some evidence" to support the finding of the hearing officer. Specifically, Plaintiff admits that the hearing officer relied on a staff report to find him guilty. He also testified that he was shown a picture of the knife allegedly found with his possessions. Plaintiff argues that the staff report was false or fabricated and the knife found in his cell did not belong to him. However, in so arguing, Plaintiff is asking this Court to assess credibility and weigh the evidence from the disciplinary hearing. Such a request lies outside the purview of the Court.

## **Conditions of Confinement in Lockdown**

Plaintiff alleges that he spent two years in lockdown resulting from the RVR conviction. As described in his pleadings and testimony, he is kept in lock down 24 hours a day with little or no yard call. The windows do not work and there is no fan in the cell, so temperatures reach in excess of 110 degrees. The toilet-sink combination constantly gets stopped up and floods. There are no televisions, educational programs, or church services. A volunteer chaplain visits only on Monday. He is strip searched and shackled whenever he leaves his cell. Medical staff do not conduct sick calls. Inmates yell, scream and bang metal all night; and they throw feces. There is inadequate ventilation. There are not enough officers on duty. The food is always cold. The top tier showers do not have lights. Rats constantly bother the inmates at night. With the exception of Plaintiff's medical care claims, Defendants failed to address Plaintiff's conditions-of-

confinement claim in their summary judgment motion. Consequently, the Court will review Plaintiff's claim under a Rule 12(b)(6) standard.

The conditions as alleged by Plaintiff, although inconvenient or uncomfortable, do not rise to the level of unconstitutional conditions of confinement. The Constitution does not require that inmates be housed in comfortable prisons; however, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded humane conditions of confinement and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care. *See Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001); *Harper*, 174 F.3d at 719. *See also Helling v. McKinney*, 509 U.S. 25, 36 (1993) (holding that the inmate must show that the risk of which he complains is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk"). In order to establish an Eighth Amendment violation regarding conditions of confinement, an inmate must establish (1) that the deprivation alleged was sufficiently serious, i.e. an official's act or omission must have resulted in the denial of "the minimal civilized measure of life's necessities"; and (2) that the prison official possessed a sufficiently culpable state of mind. *Id.* The required state of mind is one of deliberate indifference to inmate health or safety. *Id.* Deliberate indifference is established by showing that prison officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn; and (2) that they actually drew an inference that such potential for harm existed. *Id.*

Several of Plaintiff's complaints are simply frivolous. The absence of televisions or educational programs do not constitute the denial of "the minimal civilized measure of life's necessities". Although the food in lockdown may be cold, Plaintiff does not allege that the meals lack the proper nutritional value to pass constitutional muster. *See Talib v. Gilley*, 138 F.3d 211,

214 n.3 (5th Cir. 1998); *Green*, 801 F.2d at 770-71. The fact that sinks and/or toilets occasionally get stopped up does not state a constitutional clam. Although Plaintiff complains about a lack of church services, he admits that a chaplain visits the unit once a week. Plaintiff's complaint of infrequent yard call or recreation time does not rise to the level of a constitutional violation. *See Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988); *Green*, 801 F.2d at 771. Being shackled or subjected to searches is not a constitutional violation within the prison context. *See Oliver v. Scott*, 276 F.3d 736 n.9 (5th Cir. 2002). Rather, these are ordinary incidents of prison life. The fact that other inmates yell, bang metal and throw feces is certainly unpleasant. The inmates are not state actors; therefore, their misconduct does not state a constitutional violation pursuant to § 1983. As discussed previously, Plaintiff received frequent, ongoing medical treatment while he was in lockdown. Hence, his allegations regarding inadequate medical care in lockdown are unsubstantiated. Although Plaintiff complains that some of the showers do not have lights, the fact that there are showers is evidence that Plaintiff is not being housed in unsanitary or inhumane conditions. Plaintiff's claim of inadequate ventilation and heat, by themselves, do not state a constitutional claim. *See Johnson v. Thaler*, No. 99-20222, 1999 WL 1131941, at *1 (5th Cir. Nov. 12, 1999); *Taylor v. Woods*, 2005 WL 1475316 (E.D.Tex. June 22, 2005). Plaintiff has failed to present any evidence, or even allegation, that the high temperatures caused him harm. *See Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995); *Johnson v. Texas Bd. of Criminal Justice* , 281 Fed. Appx. 319, 321 (5th Cir. 2008). Finally, the presence of rat infestations under some circumstances may state a violation of an inmate's constitutional rights regarding conditions of confinement. *See e.g. Foulds v. Corley*, 833 F.2d 52, 54 (5th Cir. 1988). However, Plaintiff's conclusory statement that rats "constantly bother" the inmates at night, does not state a constitutional violation. Other than the discomfort or inconvenience of the conditions cited by

Plaintiff, he fails to allege that he actually suffered any harm. *See Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631-32 (5th Cir. 2003); *Felder v. Tillman*, No. 3:07-CV-521-JCS, 2009 WL 4786074, at *2 (S.D. Miss. Dec. 8, 2009). Finally, Plaintiff is no longer housed in lockdown at SMCI. As of at least November 6, 2017, he is incarcerated at Parchman. Doc. [88]. Consequently, Plaintiff's claims relating to the conditions of confinement in the lockdown unit at SMCI are now moot. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) ("[t]he transfer of a prisoner out of an institution often will render his claims for injunctive relief moot."); *Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000); *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). Accordingly, the undersigned finds that Plaintiff's conditions of confinement claim should be dismissed.

**Inadequate Medical Care:  Testicular Condition**

Plaintiff alleges inadequate medical care for a testicular condition based on a delay in treatment. As discussed previously, Plaintiff did not exhaust administrative remedies prior to filing the instant lawsuit; therefore, his claim for inadequate medical care should be dismissed. In the alternative, summary judgment evidence demonstrates that Defendants were not deliberately indifferent to Plaintiff's testicular condition.

To state a constitutional claim for denial of adequate medical care, a plaintiff must demonstrate that defendants were deliberately indifferent to plaintiff's serious medical needs, such that it constituted an unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Constitution guarantee prisoners "only adequate, not optimal medical care." *Spriggins v. LaRavia*, 2012 WL 1135845, at *4 (E.D. La.

Apr. 4, 2012) (emphasis in original), citing *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006). An allegation of malpractice or mere negligence is insufficient to state a claim. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999). Moreover, the fact that a prisoner disagrees with the type of medical treatment does not constitute a constitutional deprivation. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). A delay in medical care may, under certain circumstances, state a claim for constitutionally inadequate medical care. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Id.* at 195. However, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Disagreements about whether an inmate should be referred to a specialist as part of ongoing treatment do not constitute deliberate indifference. *See Alfred v. Texas Dep't of Criminal Justice*, No. 03-40313, 2003 WL 22682118, at *1 (5th Cir. Nov.13, 2003); *Hickman v. Moya*, No. 98-50841, 1999 WL 346987, at *1 (5th Cir. May 21, 1999).

In this case, Plaintiff alleges that prison officials delayed treatment of his testicular condition by not sending him to a urologist. The medical records reveal that Plaintiff first presented to the medical staff with complaints of a knot in his left testicle on May 28, 2015. Doc. [86] at 2. Medical staff were "unable to discern any nodule, papule, mass lesion, or any other lump". *Id.* Plaintiff was also examined on June 7, 2015, and June 18, 2015, for complaints of testicular pain. *Id.* at 3-5. At the latter examination, medical staff noted that Plaintiff's epididymis was tender and slightly enlarged. *Id.* at 5. Plaintiff was diagnosed with epididymitis. *Id.* On June 29, 2015, Plaintiff received off-site care. Doc. [27-1] at 1. A scrotal ultrasound was performed. Dr. Solomon noted an enlarged left epididymis that is partially cystic; however,

Plaintiff's testicles were normal with no mass. *Id.* Records indicate that upon Plaintiff's return from the off-site treatment, medical staff prescribed Plaintiff Extra Strength Tylenol as needed for pain. *Id.* at 5. Plaintiff filed the instant complaint on July 1, 2015, prior to exhausting administrative remedies with respect to the medical treatment claim for his left testicle condition.

Medical staff continued to see Plaintiff on July 18, July 24, and July 31, 2015, for complaints of testicular pain. Doc. [86] at 6-9. Plaintiff testified that on August 3, 2015, a urologist, Dr. Ross, examined and treated his condition. Doc. [75] at 35. Dr. Ross concluded that Plaintiff had enlarged and tender epididymis and prescribed Mobic. Doc. [27-1] at 8-9, 11. Plaintiff also received Naproxen. *Id.* at 29. Plaintiff was scheduled for a follow-up appointment. *Id.* at 9. The prison medical record dated August 28, 2015, indicates Plaintiff had received Extra Strength Tylenol and Mobic. Doc. [27-1] at 11. At some point, the Mobic prescription was discontinued. *Id.* at 14. As a result of transfer to another facility and transportation issues, Plaintiff did not make it to the appointment. Doc. [86] at 21. Prison medical staff repeatedly examined Plaintiff for testicle pain and prescribed Naproxen for pain. *Id.* at 16-18, 20-27. Eventually, Plaintiff was scheduled for yet another off-site consult with a Jackson area urologist. *Id.* at 21, 25; Doc. [27] at 37. According to the prison medical record, the urologist did not find anything abnormal. Doc. [86] at 27. The medical records demonstrate that medical staff examined and treated Plaintiff's left testicle pain. In addition to ongoing treatment from prison medical staff, Plaintiff was seen for left testicle pain on three separate occasions by off-site specialists. In other words, Plaintiff has failed to demonstrate deliberate indifference to his condition. He simply disagrees with the type of treatment and the timing of being seen by a specialist.

**Inadequate Medical Care:  Scalp Condition**

Plaintiff asserts that a nine-month delay in treatment for his scalp condition constitutes deliberate indifference.  Plaintiff exhausted administrative remedies with respect to this claim. He alleges that in October 2014 Nurse Practitioner Karen Deese told him that he needed to see a dermatologist to receive steroid injections in his scalp.  Plaintiff was not seen by the dermatologist until July 2015.

The medical record of October 15, 2014, confirms that Karen Deese noted a specialty consult for dermatology, although without mentioning steroid shots.  Doc. [10-1] at 1.  At the screening hearing, Plaintiff admitted that he received treatment for his scalp condition.  He stated that prison officials used the "same treatment" previously prescribed by the dermatologist, but the condition kept getting worse.  Doc. [75] at 23.  The medical records indicate Plaintiff has been diagnosed with scalp cellulitis and dermatitis.  Doc. [86-1] at 2, 17.  Several medical record excerpts corroborate Plaintiff's testimony that he received treatment for the scalp condition, including "Ketoconazole shampoo and Clindamycin solution per dermatologist request".  *See* Doc. [27-1] at 5, 11; Doc. [86-1] at 2, 12, 17, 23, 27.  In fact, the final medical record excerpt indicates Plaintiff was seen by a dermatologist, who mentioned Plaintiff's hygiene as a cause or contributing factor to his problems.  *Id.* at 27.  The record also states the scalp was looking better and Plaintiff was being treated with a therapeutic shampoo.  *Id.*  Plaintiff also testified that on July 10, 2015, (nine days after he filed the instant complaint) he saw Dr. William Waller, a dermatologist.  Doc. [75] at 20-21.  As reflected in the medical records, Plaintiff received ongoing treatment for the scalp condition but simply feels he should have seen a dermatologist sooner to receive steroid injections.  Plaintiff has failed to allege deliberate indifference to his

condition.  He simply disagrees with the type of treatment and the timing of being seen by a specialist.

**<u>Claims against Centurion</u>**

Centurion filed a separate motion for summary judgment.  Centurion is a private corporation providing medical care at SMCI.  Nevertheless, it may be sued under § 1983 by a prisoner who has suffered an alleged constitutional injury.  *See Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003).  Although not subject to vicarious liability for the constitutional torts of its employees, a private corporation such as Centurion may be held liable under § 1983 when an official policy or custom of the corporation causes, or is the moving force behind, the alleged deprivation of federal rights.  *See Rouster v. County of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014); *Rice ex rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999).  A delay in medical care may, under certain circumstances, state a claim for constitutionally inadequate medical care.  *See Mendoza*, 989 F.2d at 195.  Plaintiff alleges that Centurion's policies, practices, and customs relating to off-site specialty care caused a delay in medical treatment.  In essence, he is asserting that Centurion's custom or policy was the moving force behind his injury.

Plaintiff alleges Centurion lacks a policy for scheduling off-site specialty care and employs a practice of intentionally delaying medical treatment.  As demonstrated by Centurion's contract with the MDOC, Centurion does have a policy regarding off-site specialty care and follow-up procedures.  *See* Doc. [83] at 12-13.  The medical record excerpts and testimony from Plaintiff demonstrate that Centurion in fact sent Plaintiff to specialists on multiple occasions.  As explained above, Plaintiff received ongoing treatment for both his scalp condition and left

testicle pain.  His complaint relates to the type of treatment he received and not the absence of treatment.  Accordingly, he has failed to state a claim for inadequate medical care against Centurion.

**Motion to Appoint Counsel**

Plaintiff filed on November 6, 2017, a motion to appoint counsel.  Doc. [87].  His motion was not filed until almost two months after his deadline to file responses in opposition to the pending motions for summary judgment.  In the motion to appoint counsel, Plaintiff asserts that he cannot respond to the summary judgment motions because of his "depression, anxiety and psychotic disorders."  He also argues that he did not receive discovery responses requested in June.  Plaintiff requests appointment of counsel because he needs expert testimony; he is on psych medication; there are many defendants; and he needs discovery.

There is no right to the automatic appointment of counsel in a civil case filed under 28 U.S.C. § 1915.  *Salmon v. Corpus Christi ISD*, 911 F.2d 1165, 1166 (5th Cir. 1990); *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).  Indigent litigants in federal civil rights cases generally possess no constitutional or statutory right to appointed counsel.  *See Salmon*, 911 F.2d at 1166; *Jackson v. Cain*, 864 F.2d 1235, 1242 (5th Cir. 1989); *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987).  A trial court is not required to appoint counsel for an indigent party in a civil rights lawsuit unless the case presents truly exceptional circumstances.  *See Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988); *Good v. Allain*, 823 F.2d 64, 66 (5th Cir. 1987); *Feist v. Jefferson County Commissioners Court*, 778 F.2d 250, 253 (5th Cir. 1985); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982).  Although no comprehensive definition of "exceptional circumstances" is practical, the existence of such circumstances will necessarily turn on two basic

considerations: (1) the type and complexity of the case and (2) the abilities of the individual bringing it. *See id.*

The Fifth Circuit has directed trial courts to consider whether the appointment of counsel would be of service not only to the plaintiff, but also possibly to the court and the defendant, through sharpening of issues, the shaping of the examination and cross-examination of witnesses, and, thus the shortening of trial and assisting in a just determination. *See Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078, 1084 (5th Cir. 1991); *Feist*, 778 F.2d at 253; *Ulmer*, 691 F.2d at 213. It is also appropriate for the Court to consider whether the indigent plaintiff has demonstrated an inability to secure the assistance of private counsel, especially in view of the opportunity for a prevailing § 1983 plaintiff to recover attorney's fees. *See Jackson*, 864 F.2d at 1242. This Court is given considerable discretion in determining whether to appoint counsel. *Ulmer*, 691 F.2d at 211.

Plaintiff's complaint does not present any novel or complex issues of law. He has presented his claims in an adequate manner for the last two years, including the filing of appropriate pleadings and participation in a screening hearing. As grounds for appointment of counsel, Plaintiff notes his need for discovery and for an expert to establish causation. Discovery ended on August 1, 2017. The deadline for Plaintiff to designate experts lapsed on June 1, 2017. At this late date, any attempt by Plaintiff to conduct discovery or designate experts would be untimely. Plaintiff did not file any requests for extensions. Nor did he file a timely motion to compel. Discovery is over. Defendants have filed their respective motions for summary judgment. The undersigned recommends that Plaintiff's motion for appointment of counsel be denied.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Defendants' [79] [82] Motions for Summary Judgment be GRANTED and that Plaintiff's 42 U.S.C. § 1983 civil rights complaint be dismissed with prejudice as to all claims and all Defendants. The undersigned also recommends denying Plaintiff's [87] Motion to Appoint Counsel.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 9th day of November, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE